**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**


**UNITED STATES**                    )

                                     )          **Case No. 21-CR-272 (TJK)**

        **v.**                       )

                                     )

**JORDAN STOTTS**                    )

_____


**JORDAN STOTTS' MEMORANDUM IN AID OF SENTENCING**

Mr. Stotts, through undersigned counsel, submits this memorandum in aid of his sentencing hearing scheduled to occur on November 9, 2021. Mr. Stotts is very remorseful for his actions on January 6, 2021. While he came to Washington D.C. to express his political views and to support then President Trump, he wishes that he had not gone to the Capitol grounds. He did not intend to do so when he came to the District. He was here to attend the rally, hear the speeches, and make his voice heard. He had no intention of engaging in, or in any way, encouraging violent behavior. He came without gear, without weapons, without any plan. He was not associated with any group, did not travel with others, and did not know anyone else at the rally. He is very disappointed in himself that he got caught up in the emotions of the day and appeared to have been celebrating in the hours after. However, to his credit, he turned himself in just days after January 6. He called law enforcement on January 16 and made himself available for an interview. When the agents called him back, he arranged to go to the Law Enforcement Center and meet with them. He cooperated fully with the investigation, submitting himself to an hour long interview, providing his email address and social media information, and truthfully

answering their questions to the best of his recollections.  He described what he wore on January 6 and indeed, was wearing some of the same clothes on the day of the interview.  He expressed his contrition, noting that he wished he had thought before he acted that day; he wished he had been with someone who would have been thinking more clearly and would have told him not to do what he was doing. He regretted getting caught up in the moment and acting so foolishly. While he was interviewed by the agents in January after voluntarily going to law enforcement on his own accord, he was not arrested until 2 months later.  The FBI agents who interviewed him acknowledged in that interview that they were not concerned that he posed any threat.  They asked, and he told them, how he could be reached.  He was then allowed to leave and return home.  He was  not approached again for two months.  Mr. Stotts made, and makes, no excuses for having entered the Capitol building.  He stood ready then and stands ready now to accept the consequences for his behavior.

As this Court is well aware, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."  18 U.S.C. §3553(a).  In this case, understanding the full gravity of what occurred on January 6, 2021, and Mr. Stotts' role in those events, Mr. Stotts requests that the Court impose a period of probation with home confinement.  He does not have the ability to pay a fine in light of his largely seasonal employment.

Mr. Stotts recognizes how serious the January 6 incident was and in no way attempts to minimize his involvement in it.  Nevertheless, his charge is a Class B misdemeanor for which probation is typically an appropriate sentence.  The sentencing guidelines do not even apply to misdemeanor offenses.  Indeed, many felony offenses fall within a range that allows for a probationary sentence.

Mr. Stotts is a 32 year old man from Minnesota.  He recently started his own landscaping business and is growing that company.  He also works year round in greenhouses.  During the off season, he often travels around the country in his van. During the month preceding January 6, Mr. Stotts had traveled to Arizona in his van.  He then decided to make his way across country to visit his father in Florida.  When he heard the call from the then President to his supporters to rally in D.C., Mr. Stotts decided to take a detour to the District of Columbia to attend the rally. As he told the FBI, he had never gone to a rally or protest before.  He arrived in the DC area on January 4. He came into the city to do some sightseeing, then stayed in a campsite in Virginia. He returned on January 5 for the rally at Freedom Plaza and then again on January 6 for the speeches.  Then, he made a decision he greatly regrets – he got caught up in the moment and followed a crowd of strangers up to and into the Capitol.  He recognizes that the vision of him scaling the wall is bad, but at the time, it simply seemed like a challenge.  Again, as he has said himself, it was a terrible lapse in judgment and one he deeply regrets.  Most importantly, given the chance to do it again, he certainly would not.

While Mr. Stotts did take a video inside the Capitol and a few photos and did post a couple of posts in the immediate aftermath, after talking to his father and thinking about his actions, he posted no more.  He never returned to D.C. and did not take part in any further disruptions.   This incident and his arrest and the aftermath have caused him considerable anxiety, and he has done everything he can to cooperate with law enforcement and to quickly resolve this matter.

While Mr. Stotts does have some past criminal conduct, it is relatively minor and is more than a decade ago.  The prior contacts he had stem from a prior problem he had with alcohol for which he has received treatment.  Mr. Stotts leads a very simple and solitary life.  He is single

and has no children.  His parents divorced when he was quite young and he has been on his own since he was 16 years old. He resides in a small town in Minnesota where he works in landscaping.  In a typical year, (not this year) he hunts and fishes to support his food needs throughout the year.  He is not part of any groups outside of a spiritual group.  He attends weekly bible study which he has found very meaningful.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation.  In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation.  Mr. Stotts' likelihood of recidivism is very low.  He has expressed genuine remorse and contrition, he turned himself in and cooperated fully with law enforcement, he immediately indicated a desire to plead guilty and did so as soon as the government made the plea offer.  His acceptance of responsibility was complete and without reservation.  Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

The government concedes that Mr. Stotts committed no violent acts and destroyed no property.  He did not destroy property, steal property, commit violent acts, or encourage others to do so.  He left when asked to do so by law enforcement, although he acknowledges not as quickly as he should have.  The government cites to his "shouting" at police officers.  Mr. Stotts

acknowledges that he was loud and obnoxious but he was singing and chanting, not threatening violence.  Mr. Stotts engaged in no pre-planning or coordination activities.  He came to D.C. by himself with the purpose of showing support for Mr. Trump, but he never intended to breach the Capitol and he never intended violence.  He brought no weapons or even defensive gear with him.  After the immediate aftermath of January 6, he did not post on social media bragging about his involvement or encouraging bad actions.  When he met with law enforcement after the event, he made no excuses for his behavior, was sincerely contrite, did not blame law enforcement for his predicament, and did not rationalize his actions.

Another factor to consider is that Mr. Stotts accepted full responsibility very early on.  While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Stotts has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.

Sentences in these cases certainly have not been consistent.  *See e.g.*, *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Dona Bissey*, 21-165 (TSC) (14 days incarceration over the government's request for

probation); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (probation imposed as requested by government);  *United States v. Karl Dresch*, Crim. No. 21-0071(ABJ) (6 months incarceration already served); *United States v. Jancart*, 21-CR- 148 (JEB) (45 days incarceration); *United States v. Rau*, 21-CR-467 (JEB) (45 days incarceration); *United States v. Mazzaco*, 21-CR-54 (TSC) (45 days incarceration when government requested probation with home confinement); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation); *United States v. Edward Hemenway*, 21-CR-49 (TSC) (45 days incarceration; government requested 30); *United States v. Robert Bauer*, 21-CR-49 (45 days incarceration; government requested 30).

And, the government's recommendations in cases where they have made them, are not consistent.  *See e.g.*, *United States v. Danielle Doyle*, Crim. No. 21-00234 (TNM) (government recommended probation with two months home confinement despite noting she entered through broken window, yelled at officers, and was not fully transparent in her interview with law enforcement); *United States v. Robert Reeder*, Crim. No. 21-166 (TFH) (government requested 2 months incarceration then increased its recommendation to 6 months after learning he had engaged in violence inside the Capitol); *United States v. Jessica and Joshua Bustle*, 21-00238 (TFH) (government recommended probation with home confinement for Ms. Bustle who posted

on social media that Mike Pence was a traitor, denied media accounts of violence were accurate, minimized the conduct of all of the rioters, called for a revolution even after the events of January 6, encouraged the rioters to be proud of their actions, and minimized the impact of that day on lawmakers and democracy); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (government requested probation with home confinement noting that Bennett espoused conspiracy theories about the election, was an admirer, albeit not a member of the Proud Boys, and boasted about his conduct); *United States v. Brittany Dillon*, 21-CR-360 (government requested probation  with home confinement, despite noting that Ms. Dillon came with the explicit intention of going to the Capitol, called the Police "the devil", called for an all out civil war and anarchy).

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Stotts places his trust in this Court to do just that.

Respectfully submitted,

A.  J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004